**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **UNUM LIFE INSURANCE** | ) | |
| **COMPANY OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 5:24-CV-00230-MAS** |
| **v.** | ) | |
| | ) | |
| **JOHN PAUL CRANE,** *et al.*, | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION & ORDER

Before the Court are the competing summary judgment motions filed by Defendant Laura Oliver, on behalf of minor child Z.C. and son John Paul Crane ("Oliver Defendants") [DE 56] and Defendant Sarah Carta ("Carta") [DE 61]. The facts are not in dispute. The only legal question before the Court is whether John D. Crane's ("Crane") actions or the documents he signed properly identify beneficiary of his life insurance policy. Having considered the arguments of the parties and record before it, the Court grants the summary judgment motion of Carta.

## I.    FACTUAL BACKGROUND

### A.    CRANE'S LIFE INSURANCE POLICY

Before his death, Crane worked for Challenge Manufacturing Holdings, Inc. ("Challenge"). [DE 56, Page ID# 344]. Like many companies, Challenge offered its employees a Group Health and Welfare Plan governed by the Employee Retirement

Income Security Act ("ERISA"). [DE 56, Page ID# 344]. The policy was funded through a group policy via Unum Life Insurance Company of America ("Unum"). [DE 56, Page ID# 344].

The parties have both relied upon the testimony of Heather Daniels, former Director of Human Resources for Challenge, to describe how an employee would manage their benefits at Challenge. Per Daniels, employees at Challenge could access their benefits information via ADP Workforce portal on any device that connected to the internet. [DE 61-2, Page ID# 446]. There, the employee would view and possibly change any benefit they receive from Challenge, from their health insurance to retirement benefits to life insurance. [DE 61-2, Page ID# 446]. If an employee wanted to make a change and did so during open enrollment or during a qualifying life event, Daniels and her team would help the employee do that. "[T]he employee logs in and makes the change. It goes in the ADP system, and then either I or my staff would go in and approve it, if everything looks good. If, for some reason it doesn't, meaning they're trying to make a change outside of open enrollment or a qualifying life event, we would reject it." [DE 61-2, Page ID# 451]. If there was some error or omission (*e.g.*, the employee entered the wrong information, the employee forgot to complete a question), then "local HR [would] follow up and say, hey, I noticed that you didn't finish this; you need to take care of that." [DE 61-2, Page ID# 443]. Once that was complete, Daniels and her team would approve the request. "When someone enrolled, my team would go in and they would hit a button to approve the

enrollment, confirming that it was, in fact, either an open enrollment or a life event, so that it met all of our plan requirements." [DE 61-2, Page ID# 442].

For Crane, as part of his initial enrollment with Challenge, he obtained the life insurance policy and designated Carta as the beneficiary of said policy. [DE 1, Page ID# 3]. At the time of his death, Crane had $46,000 in basic life coverage and $100,000 in voluntary coverage.

## B.   INITIAL ROMANCE AND BUNDY CASE

Crane began a romantic relationship with Carta in late 2019 or early 2020, per Carta. [DE 56, Page ID# 346]. Carta moved into Crane's residence at some point in 2020. [DE 56, Page ID# 346].

During these initial days of their relationship, Carta was involved in a federal lawsuit that is often referenced by the parties in this case. The litigation, captioned at *Prudential Ins. Co. of America v. Delph*, No. 6:18-cv-298-REW (E.D. Ky.) ("Bundy Case"), concerned the prior romantic relationship between Carta and William Brent Bundy ("Bundy"). Judge Wier summarized the factual background of the litigation.

> Bundy worked as a forklift driver at Sherwin-Williams. Bundy and Carta began dating in January 2017 and moved in together almost immediately. At the time, Carta was still married to, but separated from, Lawrence Carta. The Carta divorce was not final until August of 2018. In April 2017, Bundy and Carta had several conversations via text message in which Bundy expressed his intent to make Carta the beneficiary of his life insurance policy and other Bundy assets. The Exhibit reflects a group of messages, commencing on April 3, 2017. Most are not dated, but all occur within the early April period. It turns out that, despite Bundy's talk that spring, he did not actually make Carta his beneficiary during the period. Indeed, he had no named beneficiary until November 2017.
>
> On November 13, 2017, Carta logged in to Bundy's Sherwin-Williams Benefits Portal while he was at work and made herself the beneficiary

of Bundy's life insurance policy. She made other elections, including adding an additional $46,000 in optional life insurance on top of the $91,000 policy already in place. Twenty-three days later, on December 6, 2017, Carta filed for Chapter 7 bankruptcy. Carta's divorce from Lawrence Carta did not become final until August 2018. On the evening of September 8, 2018, Bundy died by suicide, as a result of a gunshot wound to the head. Bundy was covered under the policy for life insurance benefits totaling $137,000 at the time of his death. Carta was the stated beneficiary, according to the records of Sherwin-Williams and Prudential, by virtue of Sarah Carta's entries on November 13, 2017.

[Bundy Case, DE 56 (Findings of Fact & Conclusion of Law), Page ID# 881 (internal citations omitted)]. Judge Wier ruled that Carta had lied about the events and granted the benefits to Bundy's default beneficiaries, his parents. [Bundy Case, DE 56 (Findings of Fact & Conclusion of Law)].

The Bundy Case was tried while Carta and Crane were together. According to Carta, Crane knew "all about it." [DE 56, Page ID# 346 (detailing testimony from Carta that Crane knew about the litigation)].

Regardless, Crane made it clear to Carta and others that she was the beneficiary of Crane's policy.

C.    NOVEMBER 2022 MEETING WITH CHALLENGE

By the fall of 2022, the relationship between Crane and Carta began to crumble. [DE 56, Page ID# 344]. Crane's life insurance policy became a friction point between the two.

On November 16, 2022, Crane informed Carta that he had met Challenge's human resource staff. Carta asked: "Take me off as beneficiary?" [DE 56-4, Page ID# 366–70]. Crane responded: "And reorders [*sic*] my HSA card  Change the plan and challenge added more to their life insurance plan on me to 41000 thousand so now all

together 141000 thousand." [DE 56-4, Page ID# 366–70]. In short, the exchange suggests that Crane intended to remove Carta as his beneficiary.

From Challenge's perspective, Crane accessed his benefits portal and started to make some changes to his overall benefits package. [DE 56-5, Page ID# 372]. The action, however, was listed as "Pending". [DE 56, Page ID# 347]. Because Crane did not "submit" any changes to Challenge to process, Challenge has no way of knowing what changes, if any, Crane was contemplating. "All I can see is changes that were made to the plans. I don't see, though, that there was ever like a beneficiary – another beneficiary change." [DE 61-2, Page ID# 472]. There is no record, digital or otherwise, of any change of beneficiary form or actual action taken by Crane to remove Carta as his beneficiary. Nor is there evidence of any follow-up by Challenge's local HR team. In short, there is no evidence about what, if any, actions Crane took that day.

D.    DECEMBER 2022 TEXT EXCHANGE

Soon after this exchange, Carta moved out of Crane's residence. [DE 63, Page ID# 63]. Carta texted Crane about returning to the residence to retrieve property, but the conversation devolved into another heated exchange. Crane wrote that Carta "won't get a dime. Bundy's was your last death insurance check you will ever get." [DE 56-4, Page ID# 366–70]. Crane added:

> [Y]ou been gone for over two weeks because you thought you could keep your shit here and not pay a storage bill and strong [sic] old dumb John on. Well you fucked up. This dogs done with you kicking me. Its not worth it. So again stay away from my house.

[DE 56-4, Page ID# 366–70]. In that same text exchange, Crane acknowledged that while he had not yet removed Carta as his beneficiary, he certainly intended to do so. **"And tomorrow I'm fixing my life insurance policies I'm going to erase this mistake in my past**. Enjoy destroying another man." [DE 56-4, Page ID# 366–70 (emphasis added)]. Crane, as of December 2022, had yet to remove Carta as beneficiary.

E.     APRIL 2023 BENEFITS CHANGE

On April 3, 2023, Crane again accessed his benefits portal and increased the amount of insurance by $6,988. [DE 1, Page ID# 3]. He did not change Carta as the beneficiary. [DE 1, Page ID# 3].

F.     CRANE'S PASSING

Crane passed away on August 3, 2023. [DE 1, Page ID# 3]. He was survived by his two children from his prior marriage Laura Oliver, an adult son, John Paul Crane (born December 14, 2005), and a minor son, Z.C. (born June 3, 2010). [DE 56, Page ID# 344; DE 61-1, Page ID# 422].

Challenged informed Unum of his passing; Carta was identified as the beneficiary of the policy; and Unum, after receiving competing claims for the benefits, filed this interpleader depositing the disputed funds with the Court.

II.     ANALYSIS

All parties agree that the express beneficiary of Crane's life insurance policies was Carta. Carta asserts that because of this fact, Crane's death benefits should go to her. The Oliver Defendants contend that Crane's intent to remove Carta as a beneficiary should result in the death benefits passing to his two sons. The sole issue

Page **6** of **15**

before the Court is not Crane's intent but whether Crane's actions demonstrate that he substantially complied with removing Carta as the beneficiary.

## A.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Further, the court may not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *See id.* However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical. *See Anderson*, 477 U.S. at 248. Then, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not

be counted." *Id.* An issue is "genuine" if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 258 (citing *First Nat'l Bank v. Cities Servs. Co.*, 391 U.S. 253 (1968)). Consequently, once the burden shifts, the nonmoving party must do more than raise some doubt or produce a "scintilla of evidence" in support of its position, it must produce sufficient evidence to require submission of the issue to the jury. *Anderson*, 477 U.S. at 252; *Lucas v. Leaseway Multi Transportation Service, Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990), *aff'd*, 929 F.2d 701, 1991 WL 49687 (6th Cir. 1991). Such evidence must be suitable for admission—but not necessarily admissible—into evidence at trial. *See Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

## B.   ERISA FRAMEWORK

This Court has "subject matter jurisdiction over an interpleader action initiated to determine the proper beneficiary of an employee pension benefit plan." *IBEW Pac. Coast Pension Fund v. Lee*, 462 F. App'x 546, 548 (6th Cir. 2012) (citing 29 U.S.C. § 1132(a)(3)(B)(ii)). As mentioned at the start, ERISA governs Crane's life insurance plan. Generally, "claims touching on the designation of a beneficiary of an ERISA-governed plan fall under ERISA's broad preemptive reach and are consequently governed by federal law." *Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 704 (6th Cir. 2000) (concluding that claims contesting beneficiary designation validity, under theories of forgery and undue influence, were preempted by ERISA); *see also McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir.) ("The designation of beneficiaries plainly relates to these ERISA plans, and we see no reason to apply state law on this issue.").

Page **8** of **15**

"The court must therefore look to either the statutory language or, finding no answer there, to federal common law which, if not clear, may draw guidance from analogous state law." *McMillan*, 913 F.2d at 311. In other words, the Court will utilize only federal law unless there is no established federal common law on point; then, and only then, will the Court turn to state law. *See Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 704 (6th Cir. 2000) (explaining that federal common law applied given that the dispute involved ERISA but "because there is no established federal common law in this circuit dealing with forgery and undue influence in the designation of beneficiaries, we look to state-law principles for guidance"); *Prudential Ins. Co. of Am. v. Delph*, No. 6:18-CV-298-REW, 2020 WL 3002341, at *7 (E.D. Ky. June 4, 2020) (looking to state-law principles for guidance because there is no established federal common law in the circuit dealing with the forgery of designation of beneficiaries).

ERISA's framework and its surrounding federal common law begin from the position that a named beneficiary should receive the benefits even in direct contrast to "nice expressions of intent" that suggest otherwise. *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285, 301 (2009). However, there is an exception for substantial compliance when an insured does all he can do or all he believed is necessary to effectuate some change in his plan. Where he has substantially complied, then the benefits must be paid in conformity with the compliance as opposed to the named beneficiary. Kentucky courts have described the doctrine as follows:

> In *Hill v. Union Central Life Ins. Co.*, 513 S.W.2d 808, 808–09 (Ky. 1974) (quotations omitted), the Court noted it has long been the rule in this

jurisdiction that substantial compliance is deemed sufficient "when the insured had done all he could do under the circumstances; all he believed necessary to effect the change or what the ordinary layman would believe was all that was necessary to accomplish the change."  Citing a line of Kentucky cases, the *Hill* Court observed that in cases where the standard for substantial compliance had been met, the critical fact was "the substantial compliance sufficient to effect the change was out of the hands of the insured and directed to the insurance company."  *Id*. at 809.

*Haste v. The Vanguard Grp., Inc.*, 502 S.W.3d 611, 614–15 (Ky. Ct. App. 2016).

### C.   SUBSTANTIAL COMPLIANCE

Although the parties have filed competing motions for summary judgment, the parties have no disagreement as to the material facts.  Rather, the parties disagree whether those material facts legally amount to substantial compliance.  The critical, undisputed facts are as follows:

- Crane voluntarily and knowingly designated Carta as his beneficiary;

- Crane accessed his employer's benefits portal in November 2022;

- Daniels testified that Challenge has no way of knowing what, if any actions, were taken by Crane when he accessed the portal in November 2022;

- Crane texted Carta indicating his intent to remove her as beneficiary in November 2022;

- Crane texted Carta again in December 2022 of his intent to remove her as beneficiary, but Crane took no action to remove Carta as beneficiary; and

- Crane accessed his benefits portal in April 2023 to increase his insurance policy, but Crane took no action to remove Carta as beneficiary.

Considering this undisputed record before the Court, the Oliver Defendants cannot satisfy the burden of substantial compliance to alter the designation of death benefits to Carta.

> To be sure, cases considering substantial compliance are always difficult.

> In some cases, facts are presented that seem to raise the unspoken question, "does the named beneficiary deserve to receive the proceeds of this policy?" Often, the named insured will be a former spouse or otherwise estranged from the insured, and the alleged intended beneficiary will be the insured's spouse at the time of death or some other loved one. One party's abandonment of the insured may stand sharply contrasted with the care provided by the other party. **Yet, it is axiomatic that the court will not decide whom the insured *should* have named as beneficiary**.

44 AM. JUR. PROOF OF FACTS 3d 377 (1997) (italicized emphasis in original; bold emphasis added). "To comply in substance with plan procedures, an insured must 'do all that he reasonably could do to meet the conditions of the policy.' [*Life Ins. Co. of N. Amer. v.*] *Leeson*, 81 Fed. App'x [521] at 524 [(6th Cir. 2003)] (internal quotation marks omitted); *see also*, *e.g.*, [*Aetna Life Ins. Co. v.*] *Wise*, 184 F.3d [660] at 663 [(7th Cir. 1999)] ('For a change of beneficiary to be effective, the party asserting that a change has occurred must establish: (1) the certainty of the insured's intent to change his beneficiary and (2) that the insured did everything he could have reasonably done under the circumstances to carry out his intention to change the beneficiary.') (internal citation omitted)." *Kmatz v. Metropolitan Life. Ins. Co.*, 232 F. App'x 451, 456–57 (6th Cir. 2007). There is certainly evidence in the record that Crane intended

to change the beneficiary from Carta to someone else.  However, there is a dearth of evidence suggesting he took any action, much less substantial compliance, to carry forward with that intent.

The Oliver Defendants counter that Crane's actions in November 2022 demonstrate substantial compliance.  Per the Oliver Defendants, when you couple Crane's texts demonstrating his intent to remove Carta with his access of his benefits portal, the Court must conclude substantial compliance.  However, nobody can inform the Court what Crane did while accessing the benefits portal.  Daniels' testimony is clear.  Crane accessed his benefits portal during open enrollment, contemplated some change to his benefits package that was listed as "pending," and never submitted the change.

> So I don't know if we had some change -- again, because I don't have access to my system any more, if there was a change with our system setup and I had to go in and change the way it was built, or if he had started an enrollment and wanted to cancel something.  I don't know what happened here, because the change to is blank.  But I know that that voluntary life was still in effect at the time of death, because we reported it to Unum.

[DE 62-1, Page ID# 467–68].  The Oliver Defendants want to **assume** that Crane removed Carta as his beneficiary in November 2022 but for some procedural snafu. [DE 63, Page ID# 691].  That Crane only failed because of some misstep by Challenge's HR staff.  But that assumption is not supported by the record.  Daniels testified that Challenge has no way of knowing what happened.

> I don't know if, again, it was a system change that we were processing, if something was started, an enrollment was pending and it was denied so he could start over again.  I don't know.  Because once that's done, it's gone. … I have no idea what was going on at this point.  I have no access to the system.

Page **12** of **15**

[DE 61-2, Page ID# 472].  There simply is no evidence before the Court that Crane's actions in November 2022 were to remove Carta as beneficiary.  As the Oliver Defendants admit, "the audit trail does not indicate whether Carta was or was not removed as a beneficiary."  [DE 63, Page ID# 691 (citing Daniels' testimony)].  The Court struggles to resolve how the Oliver Defendants can admit there was no evidence on one hand while arguing on the other hand that Crane substantially complied—Crane did "all that he reasonably could do to meet the conditions of the policy"—with changing his beneficiary.  *Leeson*, 81 F. App'x at 524.  The Oliver Defendants are coupling Crane's texts and then ascribing actions to Crane's access to his benefits portal that simply are not supported.  The Court cannot construct substantial compliance on assumptions.

Crane's actions after this supposed change in November only further reject this argument.  The following month, Crane's own texts in December clearly acknowledge that he knew he had not made any such change.  "And tomorrow I'm fixing my life insurance policies I'm going to erase this mistake in my past."  [DE 56-4, Page ID# 366–70 (emphasis added)].  Crane would only say he was going to change her as a beneficiary in December 2022 if he knew that he had not done so in November 2022.  This text alone is fatal.  Moreover, in April 2023, Crane increased the amount of his life insurance policy, but he again failed to remove Carta as the beneficiary.  Crane's actions never once matched his texts.

Rather than acknowledge this scarcity of evidence, the Oliver Defendants repeatedly point to the findings of the Court in the Bundy Case.  However, the Court

finds this reference irrelevant for two reasons. First, the facts at issue in Bundy Case stand in stark contrast to those in this litigation. In the Bundy Case, there was clear evidence that Carta had accessed and unilaterally changed the beneficiary for Bundy's life insurance to her. There is nothing to suggest anything of that kind in this case. Namely, the Oliver Defendants have not cited to any evidence that Carta accessed Crane's benefits portal or that changes were made to his beneficiary in contravention to Crane's wishes. Again, the Oliver Defendants are asking the Court to make some assumptions here to fill in the gaps of missing evidence. Second, to the extent the Oliver Defendants are using the Bundy Case to attack the credibility of Carta, the Court finds such attacks unnecessary. Without doubting the credibility findings by the Court in the Bundy Case, Carta's credibility in this dispute is not at issue. None of the critical facts listed above come from Carta. The Court is relying upon Crane's access to Challenge's benefits portal, the testimony of Daniels, and the texts between Crane and Carta. The Court does not rest any of these findings on the credibility of Carta.

In the end, Crane certainly expressed an intent to remove Carta as a beneficiary. However, there is no evidence that he took any actions to reflect that intent, much less substantially complied with fulfilling that intent. "No matter how much evidence [the Oliver Defendants] can produce to show what [Crane] *intended* to do, one glaring fact remains: He did not do it, leaving the administrator with a clearly written designation in favor of [Carta]." *Kmatz*, 232 F. App'x at 457. The

Court has little choice but to effectuate the written document even when in contravention of Carta's stated intent.

### III.   CONCLUSION

For the reasons stated herein, the Court **GRANTS** Carta's Motion for Summary Judgment [DE 61] and **DENIES** the Oliver Defendants' Motion for Summary Judgment [DE 56].  Carta's Motion in Limine [DE 60] is **DENIED AS MOOT**.

The final pretrial conference and trial in this matter, as well as all other pending deadlines, are **SET ASIDE**.

The Court will enter a judgment in accordance with this opinion.  The Clerk shall pay the funds held in the Clerk's registry, per the terms of the Judgment.

Signed this the 12th of June, 2026.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY